FILED

03/21/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 15, 2017

## MITCHELL NATHANIEL SCOTT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1498     Seth W. Norman, Judge**

_____

### No. M2016-01210-CCA-R3-PC

_____

After pleading guilty to one count of aggravated child abuse, Petitioner sought unsuccessfully to withdraw his guilty plea.  Subsequently, Petitioner sought post-conviction relief on the basis of ineffective assistance of counsel, among other things.  The post-conviction court denied relief, and Petitioner appeals.  After a review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jesse Lords, Nashville, Tennessee, for the appellant, Mitchell Nathaniel Scott.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jennifer Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner was indicted in May of 2011 by the Davidson County Grand Jury for two counts of aggravated child abuse and two counts of aggravated child neglect after his two-year-old son received second degree burns from scalding water in a bathtub.  On January 28, 2013, Petitioner entered a best interest, open, guilty plea to one count of aggravated child abuse in exchange for the dismissal of the remaining counts of the indictment.  Prior to sentencing, Petitioner attempted to withdraw the plea.  The trial court held a hearing and denied the motion, finding that Petitioner did not provide

sufficient justification to facilitate the withdrawal of his guilty plea. After a sentencing hearing, Petitioner was sentenced to seventeen years as a violent offender.

On direct appeal, Petitioner challenged the trial court's denial of the motion to withdraw his guilty plea. *See State v. Mitchell Nathaniel Scott*, No. M2013-01169-CCA-R3-CD, 2014 WL 1669964, at *1 (Tenn. Crim. App. Apr. 25, 2014), *perm. app. denied* (Tenn. Sept. 18, 2014). This Court affirmed the denial of the motion, determining that the trial court properly examined the factors set forth in *State v. Phelps*, 329 S.W.3d 436 (Tenn. 2010). This Court determined that "the balance of the factors did not weigh in favor of [Petitioner]" and the trial court properly held that Petitioner "did not provide sufficient justification for the withdrawal of his plea." *Mitchell Nathaniel Scott*, 2014 WL 1669964, at *7.

Petitioner then filed a timely petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel and that the State withheld exculpatory evidence. Counsel was appointed and an amended petition was filed. The amended petition alleged that trial counsel was ineffective by: (1) failing to meet with Petitioner; (2) failing to properly investigate the case prior to trial; (3) failing to interview witnesses; and (4) failing to file a motion to withdraw the guilty plea within a reasonable time of being instructed to do so by his client.

At the hearing on the petition for post-conviction relief, Petitioner testified that he informed trial counsel of a potential problem with the indictment prior to trial. Specifically, Petitioner was concerned about the fact that he was charged in a four-count indictment when "the incident only occurred one time." He asked trial counsel to "fix" the indictment, but trial counsel informed him that the "DA was going off of his own theories of the incident." Petitioner admitted that trial counsel explained to him that the indictment reflected alternative counts and that he did not ask any clarifying questions.

Trial counsel provided Petitioner with discovery in early summer of 2012, but they did not discuss the contents of the discovery until "like right before trial." They discussed Petitioner's "other cases" that were pending at the time. Petitioner explained that trial counsel was "going with the common-sense approach about the case," meaning that trial counsel was going to try to show that the burns on the victim were accidental rather than intentional. Petitioner recalled that trial counsel explained the defense to him by telling him that the State "couldn't prove intent." Petitioner claimed that he was unhappy with this trial strategy, and asked trial counsel if he could get his sister, girlfriend, cousin, and brother to testify. To Petitioner's knowledge, trial counsel never interviewed these witnesses. Petitioner also asked trial counsel to get "the hot water maintenance report from where . . . first they repaired the hot water heater, and then they replaced it a few weeks later." According to Petitioner, trial counsel stated that the

maintenance records were not "relevant to the case" even though the police department essentially conceded that there was a malfunction with the water heater.

Petitioner testified that trial counsel did not explain the ramifications of the guilty plea. According to Petitioner, on the morning of trial, while seated at the defense table, he looked at trial counsel and told him that he wanted to plead guilty. Petitioner did not recall if trial counsel went over the plea petition or if he read it in its entirety. Petitioner thought that he discussed a plea agreement with trial counsel but could not "recall the actual conversation." Petitioner explained that entering the plea was his attempt to get out of going to trial because he did not think that trial counsel was prepared for trial. Petitioner told trial counsel "[t]he next day" that he wanted to withdraw the plea but trial counsel did not file the motion for thirty days.

Petitioner admitted that he lied to police when he first spoke to them but claimed that his "second" version of the story was accurate wherein he told them that he placed the victim's buttocks under the faucet and used a washcloth to clean the victim after he soiled himself. Petitioner did not

> feel [he] needed to check the temperature of the water because it was one of them dials that's got a hot and a cold, and [he] cut it on because it was warm and it gradually got hot within seconds. As soon as [he] noticed [his] son's skin coming off of him, [he] put him in cold water, called his mother, and [they] took him straight to Vanderbilt Hospital.

Petitioner was aware that the State had witnesses who would testify that the water in the faucet actually got up to 132 degrees. Those witnesses would also testify that the victim would have to remain in the water for ten to twenty seconds to cause the burns that the victim received.

Trial counsel also testified at the hearing. Trial counsel primarily practiced criminal law and had an additional attorney who was helping out as "second chair" on Petitioner's case. Trial counsel "inherited" the case after another attorney developed a conflict. When he received the file and discovery, trial counsel met with Petitioner several times, at first discussing Petitioner's "other" case, a murder case, but eventually the "primary focus of [the] meetings shifted to the child abuse case."

Trial counsel recalled discussing the indictment with Petitioner and explained to him that there were four counts because the State was pursuing "alternative theories." Trial counsel met with Petitioner ten to twenty times and discussed the child abuse case on approximately seven of those visits. Trial counsel reviewed the case and determined that the best trial strategy was to argue that Petitioner had no intent to injure his child.

Trial counsel noted that the discovery included information to indicate that detectives "inspected the water heater" and saw that it was set to 125 degrees, "so the detectives were going to testify that the water heater was not functioning properly" if the water got up to 132 degrees. Trial counsel did not investigate the water heater any further because "police detectives were going to testify that the water heater was malfunctioning, and they were going to testify that this was not [Petitioner's] residence, inferring that he did not have knowledge of this malfunction." This testimony from the officers would fit "within the realm of [the] defense of accidental injury." Trial counsel admitted on cross-examination that he did not request any additional maintenance records from the housing authority with regard to the water heater. Trial counsel was told that the water heater was replaced soon after the incident but was unsure if police tested the old water heater or the new water heater. Trial counsel did not think that a report showing the water heater was malfunctioning would be a "smoking gun" in Petitioner's case but admitted that it would have helped the argument that the injuries were accidental. Trial counsel acknowledged that he was not able to get in touch with any of the witnesses Petitioner wanted him to interview prior to trial.

Trial counsel testified that he was involved in plea negotiations prior to trial and that there was talk about a "global resolution for all of the cases," including the murder case. Trial counsel recalled that Petitioner declined the offer of fifteen years on each offense, to be served consecutively to each other at 100%. Trial counsel did not know the resolution of the murder charge because he changed jobs prior to Petitioner's trial and no longer represented him on that charge.

Trial counsel explained that sometimes Petitioner had "trouble comprehending things in general" but that when concepts were broken down and explained "piece by piece," Petitioner "seemed to understand it fine." Trial counsel specifically recalled speaking "at length" to Petitioner about the guilty plea and that "basically, he was getting the result if he lost the trial by not even trying it." Trial counsel admitted that Petitioner called trial counsel the day after the plea. Trial counsel was unavailable to talk to Petitioner, and trial counsel did not know what Petitioner wanted to discuss at that time. Trial counsel went to see Petitioner a few days later and during this meeting, Petitioner asked to withdraw the plea because it "wasn't a good deal." Trial counsel "met with [Petitioner] a number of times mainly to try to nail down an actual legitimate reason other than it was just a bad deal." When trial counsel realized Petitioner was serious about withdrawing the guilty plea, trial counsel filed the motion to withdraw the plea. Trial counsel informed the trial court at the hearing on the motion that any delay in filing the motion was attributable to trial counsel, not Petitioner.

The post-conviction court denied relief. Petitioner filed a timely notice of appeal.

*Analysis*

*A. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

*B. Ineffective Assistance of Counsel*

Petitioner argues that his guilty plea was entered "while [he was] in a state of fear and confusion" due to the ineffective assistance of trial counsel. Specifically, Petitioner asserts that trial counsel failed to adequately discuss the case and meet with him prior to trial, failed to timely file the motion to withdraw the guilty plea, and failed to properly investigate the case. Petitioner also argues that he received ineffective assistance of counsel because trial counsel failed to recognize his mental health issues. The State argues that Petitioner has not shown that he received ineffective assistance of counsel.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a

claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In its order denying relief, the post-conviction court accredited the testimony of trial counsel over that of Petitioner. The post-conviction court determined that Petitioner's credibility was thwarted by the various "inconsistencies" within the multiple versions of the events he relayed to officers and that trial counsel's credibility was strengthened by his "high moral character" and professional reputation.

Petitioner claims on appeal that trial counsel's "lackadaisical" approach to representation, evidenced by his failure to thoroughly investigate the repairs made to the

water heater, was ineffective assistance of counsel and that the post-conviction court erred in finding otherwise. As noted, the post-conviction court accredited the testimony of trial counsel in this regard. Trial counsel testified at the hearing that the police report in the discovery file did, in fact, indicate that the water heater was not working properly. Trial counsel felt that this certainly helped Petitioner's case, as it strengthened their defense that Petitioner lacked the intent necessary to commit the crime. However, trial counsel did not think that any further investigation was necessary as it was not a "smoking gun." Even though trial counsel acknowledged that he had no idea whether the police tested the old hot water heater or perhaps a replacement hot water heater, the post-conviction court determined any additional information would have been "cumulative." The post-conviction court assessed the credibility of the witnesses and determined that trial counsel was the more credible witness. *See Momon*, 18 S.W.3d at 156. The evidence does not preponderate against this finding. Moreover, Petitioner did not present the maintenance report at the post-conviction hearing.

Petitioner also claims the post-conviction court erred by determining trial counsel was not ineffective in preparing the case for trial. Specifically, Petitioner complains trial counsel did not adequately meet with Petitioner and did not thoroughly investigate his case. The post-conviction court noted that trial counsel represented Petitioner not only in this case but in a first degree murder case. The testimony of trial counsel indicated that they met and discussed this case at least seven times prior to the plea. The post-conviction court determined that Petitioner received a copy of discovery and that trial counsel met with Petitioner prior to trial to discuss the discovery. The post-conviction court pointed out that Petitioner failed to present any witnesses at the hearing on the petition who he claims trial counsel failed to investigate prior to trial. Petitioner bears the burden of producing the favorable evidence regarding his mental health that he claims trial counsel was ineffective for failing to present to the trial court. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). The evidence does not preponderate against the determinations of the post-conviction court. Petitioner has not identified what else trial counsel could have achieved through additional preparation or investigation of witnesses. Petitioner is not entitled to relief on this basis.

Finally, Petitioner alleges that trial counsel's failure to file the motion to withdraw the guilty plea until approximately one month after the entry of the plea negatively affected his ability to succeed on the motion. Trial counsel testified that he waited to file the motion in order to ensure Petitioner really wanted to withdraw the plea. Moreover, on direct appeal, this Court did not hold the timeliness of the motion against Petitioner. *Mitchell Nathaniel Scott*, 2014 WL 1668864, at *5-7. In fact, this Court determined that Petitioner did not provide a reason for the delay and failed to establish a "fair and just reason" for withdrawing his guilty plea. *Id.* The post-conviction court determined that Petitioner failed to prove prejudice because he did not show that "haste in filing would

have resulted in a different result." The record does not preponderate against the judgment of the post-conviction court. Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE